IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMMY RODGERS, | Case No. 2:21-cv-00858-NBF |
| Plaintiff, | |
| v. | |
| MIDLAND CREDIT MANAGEMENT, INC., ET AL., | |
| Defendants. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(3) OR IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a), OR IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant, Midland Credit Management, Inc. ("Midland" or "Defendant"), by and through its undersigned counsel, hereby files this Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint (Dkt. #44) filed by Plaintiff, Sammy Rodgers ("Plaintiff"), for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). In the alternative, Defendant moves to transfer venue based upon *forum non conveniens* pursuant to 28 U.S.C. § 1404(a). In the further alternative, but only in the event and to the extent the Court determines that venue in this Court is proper, Defendant moves for dismissal of the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

As will be set forth more fully below, Plaintiff's vague and unspecific Complaint makes no factual connection between the credit card account which purportedly forms the basis of his claims and the Western District of Pennsylvania. Instead, Plaintiff confuses the notions of personal jurisdiction and venue in the hope that he can maintain an action in this Court. Midland does not reside in the Western District of Pennsylvania for purposes of venue and Plaintiff's attempt to

shoehorn in an argument that personal jurisdiction over Midland by this Court – and with-it venue – exists is unsupported. In fact, Plaintiff's claims are so vague that it is not entirely clear where – if at all – Plaintiff could file this lawsuit. Regardless, what is clear is that simply alleging that Midland does business in the Western District of Pennsylvania, without more, is not sufficient to confer venue in this District.

Moreover, and in the alternative, the relief that Plaintiff seeks – declaratory relief under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA") – is simply not permissible and an abundance of caselaw confirms such a fact. Thus, to the extent the Court deems that Plaintiff has pled a sufficient basis to keep this matter in the Western District of Pennsylvania, his claims nonetheless fail and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

**1. Procedural History**

On July 2, 2021, Plaintiff filed his initial Complaint which consisted of nine paragraphs and purported to assert a single count of an alleged violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"). (*Id*.). Despite choosing to file this action in the Western District of Pennsylvania, the alleged violation in the initial Complaint arose out of a civil action Midland filed against Plaintiff in Little Rock, Arkansas and Plaintiff's unsupported claims that he was allegedly given incorrect information regarding the status of that lawsuit. (Dkt. #1 at ¶¶ 4, 6 and 7; Transcript ("Tr.") 5/24/22 at 10:1-5). Plaintiff moved for the entry of a default judgment against Midland (Dkt. #14) after filing the initial Complaint, but the Court vacated the Clerk's entry of default and denied Plaintiff's motion because "the proof of service submitted by Plaintiff [did] not demonstrate that Midland was properly served …." (Dkt. #17). Service was thereafter made, and Midland answered the Complaint on March 24, 2022. (Dkt. #28).

An initial Rule 16 Case Management Conference was held on May 24, 2022, during which discussions between the parties and Court were transcribed, and a further Case Management Conference was scheduled to take place on June 3, 2022. (Dkt. ##39, 40, 41, and 45).[1] At the Conference held on June 3, 2022, Plaintiff sought and was granted leave to file an Amended Complaint. (Dkt. #43).

In his Amended Complaint (Dkt. #44) Plaintiff completely changed the entire theory and purported factual basis of his claims. The original Complaint alleged violations under the FDCPA based on the claim that Defendant incorrectly advised Plaintiff of the status of his credit card account and the lawsuit in Arkansas. Plaintiff completely abandoned this purported FDCPA claim instead electing to assert an FCRA request for declaratory and injunctive relief against not only Midland, but also five new defendants, arising from allegedly improper credit reporting of his credit card account.[2]

The Court granted Midland's Local Rule 7E motion (Dkt. #46) for extension of the time to respond to the Amended Complaint and set August 24, 2022, as the deadline for Midland's response to the Complaint (Dkt. #50). Defendant now files its Motion and this supporting Brief.

**2. Factual Background**

Plaintiff's Amended Complaint purports to assert a claim for declaratory and injunctive relief under the FCRA arising from purported credit reporting regarding a certain Mastercard account that Plaintiff received from Capital One Bank (the "Account"). (*Id*. supra). Plaintiff claims that he disputed unspecified "various charges" to the Account with Capital One Bank on

---

[1] This Court may consider the documents that have already been filed with this court – including the transcript of prior proceedings - in ruling upon the Motion because they are "matters of public record." *See e.g. AAMCO Transmissions, Inc. v. Romano*, 42 F.Supp.3d 700, 710 (E.D. Pa. 2014).
[2] There is no indication in the docket of the issuance of any summonses as to the newly added defendants, let alone service of process on them.

the vague grounds that "he did not authorize" those charges. (*Id*. at ¶ 17; see also ¶31 alleging that "Rogers again disputed the debts with the credit reporting agency defendants advising that the charges were not authorized and that Capital One did not process the dispute."). To be clear, at no point does Plaintiff identify the purported "charges" that he believes form the basis of his action in the Amended Complaint.

Plaintiff also acknowledges that Capital One Bank subsequently transferred the Account to Midland. (*Id*. at ¶¶ 18 and 20). Plaintiff next alleges, without any identification of the specific charges that are at issue, that Midland failed to conduct a proper investigation as it relates to the Account and the alleged dispute. (*Id*. at ¶¶ 23, 30, 32). Instead of identifying the specific charges that he is allegedly disputing – and how such charges concern the Western District of Pennsylvania – Plaintiff does nothing more than allege that "Based on information, Plaintiff disputed the account with Midland Credit Management Inc. and with the consumer reporting agency defendants." (*Id*. at ¶ 23).

Plaintiff also asserts that subject matter jurisdiction exists under 28 U.S.C. § 1331. (*Id*. at ¶ 8). Plaintiff further baldly asserts that venue lies in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1). (*Id*. at ¶ 10). However, at no point does Plaintiff allege how his credit card account, any of the transactions or credit reporting arising from the Account or his claims against any defendants have anything to do with the Western District of Pennsylvania. Instead, Plaintiff baldly claims that "each of the defendants reside in the Commonwealth of Pennsylvania and in the Western District of Pennsylvania" (*Id*. at ¶9).

Plaintiff also avers only that he is an individual but does not indicate any information regarding where he resides. (Dkt. #46 at ¶ 1). His Amended Complaint also lacks any allegations indicating how any supposed acts or omissions of Midland (or any of the unserved defendants for

4


that matter) relating to Plaintiff occurred in or were somehow directed towards the Western District of Pennsylvania. (*See generally* Dkt. #46).

Of note, Plaintiff explained at the conference held on May 24, 2022, that he maintains several mailing addresses, but his primary residence is in Miami and before that he was based in New York for ten years. (Tr. 5/24/22 at 5:8-14, 20-21; 6:1-3).[3] Plaintiff also stated that he has a mailing address in, and sometimes stays in, Irwin, Pennsylvania. (Tr. 5/24/22 at 5:8-18). However, Plaintiff does not receive much mail in Irwin, Pennsylvania, and it consists mostly of sales circulars and other junk mail.[4] (Tr. 5/24/22 at 5:15-18). Tellingly, the Amended Complaint does not aver that Midland directed any mail to Plaintiff in Irwin, PA or anywhere else within the Western District of Pennsylvania. In short, there is nothing in the Amended Complaint to link the Western District to the alleged wrongdoing aside from Plaintiff's broad allegation that the defendants reside in the Western District by virtue of their business dealings in the Commonwealth.

---

[3] Interestingly, Plaintiff's Initial Disclosures, portions of which attached collectively hereto as Exhibit 1, reveal several different addresses for Plaintiff. (Ex. 1 supra). None of those addresses are in Miami, where Plaintiff stated that he resides, or in the Western District of Pennsylvania. In his submissions to the Consumer Financial Protection Bureau made in June 2022, Plaintiff indicates his address as Jamaica, NY 11432. (Ex. 1 at Pgs. 2-9). This address is in the Eastern District of New York. Defendant recognizes that it has attached documents outside of the Amended Complaint, and it respectfully submits that this Court may review these documents without converting the instant motion into one for summary judgment. "Generally speaking, a trial court has the discretion to address evidence outside the complaint when ruling on a motion to dismiss." *Pryor v. NCAA*, 288 F.3d 548, 559 (3d Cir. 2002). The court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached" to the complaint. *Id*. at 560. Although a district court may not consider matters extraneous to the pleadings, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)(citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Plaintiff specifically refers to his CFPB complaints at ¶33 of the Amended Complaint and refers to his credit reports at ¶39. Thus, the Court can consider the documents provided at Exhibit 1 in connection with this Motion.

[4] No such address appears in Plaintiff's Initial Disclosures, and Plaintiff did not use any such address in his submissions to the CFPB.

Undeterred by the clear deficiencies in his pleading, Plaintiff asks the Court for declaratory judgment under the FCRA where no such relief is permitted under that statue. In so doing, the Amended Complaint states, in part, as follows:

> "A justiciable controversy exists as to whether the consumer reporting agencies and Midland Credit Management Inc. are complying with their obligations under federal law by not performing a full and adequate investigation and only requiring Midland Credit Management verify the ownership of the account rather than the underlying dispute as to the validity of the charges."

(*Id*. at ¶ 34).

Plaintiff continues, in his prayer for relief, and asks that the "Court enter a declaratory judgment that the dispute and investigation procedures of the defendants do not comply with the [FCRA] and that the defendants be enjoined from further violations of the [FCRA] including a requirement that Plaintiff's dispute be fully and thoroughly investigated or that they remove the account or balance owing from the consumer reports." (*Id*. at prayer).

Given the foregoing facts and the arguments set forth below, Plaintiff's Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) due to improper venue. If, however, the Court were to determine that venue in the Western District of Pennsylvania is proper, the Court should nonetheless dismiss Plaintiff's Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). By any reading, the Amended Complaint fails to state any claim for which relief can be granted because there is no private right to declaratory relief under the FCRA.

## II. LEGAL STANDARDS

### 1. Improper Venue

28 U.S.C. § 1391(b) defines the proper venue, and provides that an action "may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).  When a case has been brought in the wrong venue, the Court may take either of two actions.  The Court may dismiss the action for lack of venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or, in the interest of justice, the Court may transfer the action to a venue that is proper.  28 U.S.C. § 1406.

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that "a party may assert the following defenses by motion: ... (3) improper venue."  In ruling on a Rule 12(b)(3) motion, the Court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Kimmel v. Phelan Hallinan & Schmieg, PC*, 847 F. Supp.2d 753, 759-60 (E.D. Pa. 2012) (quoting *Bockman v. First Am. Mktg. Corp.*, 2012 WL 171972, at *1 n. 1 (3d Cir. 2012)).  As the United States Court of Appeals for the Third Circuit has explained, the defendant bears the burden of showing that the chosen venue is improper or, in the alternative, that transfer to another district is justified for other reasons.  *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982).

    2.    ***Forum Non Conveniens***

In ruling on motion to transfer venue pursuant to 28 U.S.C. § 1404(a), courts apply a multi-factor test, weighing private and public interests, to determine whether transfer under Section 1404(a) is appropriate. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).  The private interests include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claims arose; (4) the convenience of the parties given their relative physical and

financial condition; (5) the convenience of the witnesses to the extent they may be unavailable for trial in a given forum; and (6) the location of books and records to the extent they could not be produced in the alternative forum. *Id*. at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations of trial logistics; (3) the relative court congestion of the two fora; (4) the local interests of each forum in deciding local controversies; (5) the public policies of the fora; and (6) the judges' relative familiarity with the applicable law. *Id*.

### 3. Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (citation omitted). Any legal conclusions asserted in the complaint, however, are not accepted as true. *Iqbal*, 556 U.S. at 678.

A complaint meets the facial plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In making this determination, a court may consider allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and any undisputedly authentic document(s) that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document(s). *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-1197 (3d Cir. 1993).

### III. ARGUMENT

#### 1. Improper Venue.

Plaintiff's reliance on 28 U.S.C. § 1391(b)(1) as the sole basis to establish venue in the Western District of Pennsylvania (Dkt. #44 at ¶ 9) is misplaced. Plaintiff alleges that Midland should be deemed to reside in the Western District of Pennsylvania by operation of 28 U.S.C. § 1391(c)(2) and (d) based upon Midland's registration to conduct business in Pennsylvania. (*Id.* at ¶¶ 10-12). Under controlling principles of Pennsylvania law, however, Midland's registration to do business in the Commonwealth of Pennsylvania does not subject it to general personal jurisdiction in Pennsylvania, and therefore Midland does not reside in any district in Pennsylvania for purposes of 28 U.S.C. § 1391(b)(1).

"Residency" for venue purposes as it relates to an entity is guided by 28 U.S.C. 2391(c), which states, in part: "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question…" 28 U.S.C. 1391(c). Thus, for purposes of a venue determination in this matter the personal jurisdiction with respect to the instant action must be considered. And, simply, the Court does not have personal jurisdiction – via general or specific jurisdiction - over Midland in connection with the instant action.

In *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542 (2021), *cert. granted*, 142 S. Ct. 2646 (2022), the Supreme Court of Pennsylvania addressed whether Pennsylvania courts may exercise general jurisdiction over a company pursuant to 42 Pa.C.S. § 5301 based solely upon the

9

company's registration to do business in Pennsylvania.  *Mallory* decisively answered this question in the negative, going so far as to declare 42 Pa.C.S. § 5301(a)(2)(i) unconstitutional.  Consequently, Midland's registration to conduct business in Pennsylvania alone is not a cognizable basis for a Pennsylvania state court to exercise general personal jurisdiction over Midland and, as such, Midland cannot be deemed to reside in the Western District of Pennsylvania for purposes of 28 U.S.C. § 1391(b)(1), (c)(2), or (d).

Plaintiff also alleges that Midland has several general business contacts with Pennsylvania in connection with attempting to collect debts owed by Pennsylvania resident consumers.  (Dkt. #44 at ¶ 13).  Critically, none of those alleged contacts have any connection to this case and are thus meaningless to the jurisdictional analysis.  *See Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1780 (2017).  Regardless of how much debt collection activity Midland might engage in Pennsylvania with respect to Pennsylvania resident consumers, the Court lacks specific jurisdiction over Midland because there is simply no connection between Midland, Plaintiff, and Pennsylvania, regarding the credit reporting and investigation of which Plaintiff complains.  *Id.* ("What is needed— and what is missing here— is a connection between the forum and the specific claims at issue.")

For the foregoing reasons, the Western District of Pennsylvania is an improper venue for this action.  Midland is not a resident of Pennsylvania for purposes of this action and the Court does not have personal jurisdiction, be it specific or general, for venue to be triggered in this instance under 28 U.S.C. §1391.[5]  Plaintiff's Amended Complaint should, therefore, be dismissed without prejudice with leave for Plaintiff to commence his action in a proper venue.

---

[5] Defendant also respectfully submits that Plaintiff's Amended Complaint is so vague that it lacks any clear indication of which venue would be proper – if any – to bring this lawsuit.  Such lack of clarity does not render Defendant's arguments any less persuasive.  What is clear is that this case does not belong in the Western District of Pennsylvania.

**2. *<u>Forum Non Conveniens</u>*.**

The Western District of Pennsylvania is Plaintiff's chosen forum notwithstanding that he does not reside in the District. Conveniently, at no point in the Amended Complaint does Plaintiff identify any connection that he has to Pennsylvania, let alone the Western District. However, and given Plaintiff's statements at the initial conference, it appears that his tenuous connection to the Western District is Plaintiff's claim that he occasionally stays in Irwin when visiting Pennsylvania, and that he supposedly maintains a mailing address in Irwin at which he receives sales circulars and other junk mail. Importantly, Plaintiff has not alleged that Midland directed any mail or other communications to him in the Western District or directed any other activity regarding the allegations in the Amended Complaint to or within the Western District of Pennsylvania. Similarly, Plaintiff has not alleged that Midland communicated to any other person or entity in the Western District any credit reporting or other information regarding Plaintiff. Therefore, this is an instance where Plaintiff's choice of forum is outweighed by the other private and public interests that militate in favor of the case proceeding in a different and more appropriate forum.

Again, and for starters, Plaintiff's claim did not arise in the Western District of Pennsylvania. And while many of the private and public factors are neutral, the remaining factors all favor a venue other than the Western District of Pennsylvania. Conveniently, Plaintiff doesn't allege sufficient facts to pinpoint where this case should have been filed and his statements regarding his residency vary. For instance, Plaintiff indicated that he resides in Miami, spends considerable time in Colombia, South America, and maintains an address or part-time residence in Jamaica, Queens, New York. On these facts, however, there remains nothing connecting this case to the Western District of Pennsylvania.

Consequently, the weighty public interest consideration of the local interests of each forum in deciding local controversies warrants the transfer of this case to a different district court. There is nothing local to the Western District about this controversy. Neither Plaintiff nor Defendant are residents of the Western District. No conduct complained of here occurred in or was directed toward the Western District. The Western District should not be expected to expend its valuable and limited judicial resources presiding over non-local matters where there are at least two other districts – Southern District of Florida and Eastern District of New York – that have more of a connection to the litigants, particularly Plaintiff, and the claim being asserted.

The Third Circuit has held that a district court did not abuse its discretion in finding that public interest factors weighed in favor of dismissal (in favor of the plaintiff pursuing their action in a foreign jurisdiction) where there was minimal connection of the facts to the Western District of Pennsylvania. *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 879 (3d Cir. 2013). Here, perhaps the only connection to the Western District is that Plaintiff's counsel's office is located in it. Under the circumstances, the public interest factors weigh in favor of transfer, and outweigh Plaintiff's choice of forum.

Consequently, if this Honorable Court does not dismiss this matter based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3), this Honorable Court should transfer this matter based upon *forum non conveniens* as codified in 28 U.S.C. § 1404(a).

**3.** *Failure to State a Claim*.

Plaintiff's claim also fails to state a claim because the declaratory relief that he seeks is not permissible under a FCRA claim. Plaintiff alleges that Midland violated Section 1681s-2(b) of the FCRA by failing to properly investigate an unspecified dispute regarding unidentified charges to his Account. (Dkt. #44 at ¶¶ 52, 60, 67). Based upon this alleged – and vague - violation,

12

Plaintiff seeks a declaration "that the dispute and investigation procedures of the defendants do not comply with the [FCRA] and that the defendants be enjoined from further violations of the [FCRA] including a requirement that Plaintiff's dispute be fully and thoroughly investigated or that they remove the account or balance owing from the consumer reports." (*Id*. at prayer). Plaintiff's claim must fail because the FCRA does not provide a private right to declaratory relief within the context that Plaintiff seeks.

In *Washington*, consumers filed suit against credit reporting agencies (the "CRAs") under the FCRA for allegedly failing to maintain reasonable procedures. *Washington v. CSC Credit Servs., Inc*., 199 F.3d 263, 264 (5th Cir. 2000). The consumers demanded declaratory and injunctive relief "ordering defendants to desist from providing credit reports to insurers in connection with claims investigations." *Id*. The CRAs argued that the FCRA does not allow private litigants to obtain declaratory or injunctive relief. *Id*. at 268. The Fifth Circuit agreed with the CRAs based upon the language of the FCRA, which unambiguously gives the Federal Trade Commission ("FTC") the right to seek declaratory or injunctive relief but does not provide it to private litigants. *Id.* at 268-269. In particular, the 5th Circuit in *Washington* stated: "We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief **solely** with the FTC." *Id*. at 268 (emphasis added).

This District Court has also previously applied the same logic to FCRA claims. In *Kekich*, a consumer filed a class action under the FCRA and requested equitable relief. *Kekich v. Travelers Indemnity Co*., 64 F.R.D. 660, 662 (W.D. Pa. 1974). The Hon. Louis Rosenberg noted that the FTC is the administrative enforcement agency with respect to the FCRA and that it was the only

entity that could request equitable relief under the act. *Id*. at 668. ([the FCRA] "does not provide for equitable relief such as the plaintiff in the instant matter has requested"); *See also Dicesari v. Asset Acceptance LLC*, 2012 WL 4108944 (E.D. Pa September 18, 2012) holding that "the affirmative grant of power to pursue injunctive relief under the FCRA solely to the Federal Trade Commission (FTC) demonstrates that Congress did not contemplate individual litigants' pursuit of injunctive relief under the FCRA."

Several courts that have encountered this issue have followed *Washington* and *Kekich*. *See Poulson v. Trans Union, LLC*, 370 F. Supp. 2d 592, 593 (E.D. Tex. 2005); *Owner-Operator Indep. Driver Ass'n, Inc. v. Usis Commercial Servs., Inc.*, 410 F. Supp. 2d 1005, 1007 (D. Colo. 2005); *Brown v. Pa. Higher Educ. Agency*, CV 19-979 (CKK), 2019 U.S. Dist. LEXIS 80843, 2019 WL 2103127, at *2 (D.D.C. May 14, 2019); *Daniels v. Experian Info. Solutions, Inc.*, No. CV 109-017, 2009 U.S. Dist. LEXIS 53511, 2009 WL 1811548, at *4 (S.D. Ga. June 24, 2009); *Miller v. Sunoco, Inc.*, No. 07-1456, 2008 U.S. Dist. LEXIS 16813, 2008 WL 623806, at *2 n.1 (E.D. Pa. Mar. 4, 2008) ("[T]he vast majority of district courts that have addressed the issue of injunctive relief have followed the Fifth Circuit's decision in *Washington*"); *Anderson v Capital One Bank*, 224 F.R.D. 444, 448 (W.D. Wisc. 2004); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 338-40 (N.D. Ill. 2002), *appeal dismissed sub nom.*, *Albert v. Trans Union Corp.*, 346 F.3d 734 (7th Cir. 2003); *Betts v. Commonwealth of Virginia*, No. 3:06cv753, 2007 U.S. Dist. LEXIS 10109, 2007 WL 515406, at *5 (E.D. Va. Feb. 2, 2007); *McCullough v. Trans Union LLC*, No. 3:06cv432-W, 2006 U.S. Dist. LEXIS 93166, 2006 WL 3780536, at *3 (W.D.N.C. Dec. 20, 2006); *Hafez v. Equifax Information Services, LLC*, 2021 WL 1589459 (D.NJ April 23, 2021); *Owoyemi v. Credit Corp Sols. Inc.*, No. 21-CV-8021, 2022 U.S. Dist. LEXIS 42106, 2022 WL 993011, *3 (S.D.N.Y. Mar. 9, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 60702, 2022 WL

992842 (S.D.N.Y. Mar. 31, 2022).[6] The FCRA simply does not permit a private litigant, such as Plaintiff, to obtain a declaratory judgment or injunctive relief.[7] Yet, this is exactly what Plaintiff is seeking. The sole claim is titled "For Declaratory and Injunctive Relief" and the prayer specifically requests the same. (*See* Complaint at pg. 6 and prayer.) Even assuming the allegations contained in the Complaint as true, the Court is constrained by the FCRA and must dismiss the Complaint.

Even if Plaintiff were requesting monetary damages, and it is clear that he is not, he would nevertheless fail to state a valid claim. The only section of the FCRA that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information is 15 U.S.C. §1681s-2(b).[8] *SimmsParris v. Countrywide Financial Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). In

---

[6] The Third Circuit has applied a similar same rationale to the FDCPA. In *Weiss*, the Third Circuit was tasked with determining whether a private litigant could obtain declaratory or injunctive relief under the FDCPA. *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004)(abrogated on other grounds). It noted "[t]he FDCPA contains no express provision for injunctive or declaratory relief in private actions." *Id*. at 341 (citing 15 U.S.C. § 1692k). The Court held that because the FDCPA, like the FCRA, explicitly provides declaratory and equitable relief only to the FTC that Congress intended to preclude equitable relief in private actions. *Id.* at 342 ("we hold injunctive and declaratory relief are not available to litigants acting in an individual capacity under the FDCPA").

[7] The cases that have held otherwise are typically outliers. For example, in *Greenway v. Information Dynamics, Ltd.*, 399 F.Supp. 1092 (D. Ariz. 1974), *aff'd per curiam*, 524 F.2d 1145 (9th Cir. 1975), *cert. denied*, 424 U.S. 936, 96 S. Ct. 1153, 47 L. Ed. 2d 344 (1976), injunctive relief was granted to a class of private litigants under the FCRA, but the defendants never challenged the plaintiffs' right to such relief, *id*. at 1096-97, and the issue was not raised on appeal, *Greenway*, 524 F.2d at 1146. In *Andrews v. Trans Union Corp.*, 7 F.Supp.2d 1056 (C.D. Cal. 1998), *aff'd in part*, 225 F.3d 1063 (9th Cir. 2000), *rev'd*, 534 U.S. 19, 122 S.Ct. 441, 151 L. Ed. 2d 339 (2001), although the court noted that other courts had found equitable relief inappropriate under the FCRA, it determined that the plaintiff was entitled to an injunction pursuant to her state law claim, *id*. at 1083-84. Such considerations are not at issue in this action.

[8] 15 U.S.C. § 1681s-2(b)(1) states:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
> (a) conduct an investigation with respect to the disputed information;
> (b) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (c) report the results of the investigation to the consumer reporting agency;
> (d) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that

15

order to state a cognizable claim under §1681s-2(b), a consumer must establish: (1) that he notified a CRA of the dispute under 15 U.S.C. §1681i; (2) that the CRA notified the party who furnished the information; and (3) that the party who furnished the information failed to investigate or rectify the disputed charge. *Hoffman v. Wells Fargo Bank, N.A.*, 242 F.Supp.3d 372, 391 (E.D. Pa. 2017).

Plaintiff vaguely alleges that he disputed charges with the CRA defendants. (*See* Complaint at ¶ 21, 29.) He does not provide specific dates, explain how he contacted the CRA, or provide documents to support his claim that he contacted them. In short, a fair reading of the Complaint provides only a recitation of the elements for a claim under Section 1681s-2(b). This is not enough to survive a motion to dismiss.

Further, Plaintiff does not list the dates of the reporting at issue and/or specify the exact charges that are in dispute.[9] Moreover, the Complaint also fails to specify what information Midland provided to a CRA, which CRA the information was provided to, and how such information was allegedly incorrect. Critically, Plaintiff provides no factual allegations regarding the specific reported information he believed to be inaccurate, how such reporting was inaccurate, when such reporting took place, and for how long such reporting continued. Rather, Plaintiff proffers the conclusory assertion that Midland "failed to conduct any real investigation." (*Id*. at ¶

---

        compile and maintain files on consumers on a nationwide basis; and
(e) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1); for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –
    i. modify that item of information;
    ii. delete that item of information; or
    iii. permanently block the reporting of that item of information.

[9] How could the defendants be forced to investigate a charge(s) when Plaintiff has failed to identify what he believes to be incorrect?

59.)  Without more, Plaintiff's allegations are purely conclusory and fail to state a claim upon which relief can be granted.

As a result, based upon the foregoing, Plaintiff's FCRA claim is legally insufficient and must be dismissed with prejudice.

### IV. **CONCLUSION**

For all of the foregoing reasons, Defendant, Midland Credit Management, Inc., respectfully requests that this Honorable Court grant the within motion and enter an Order dismissing the Amended Complaint filed by Plaintiff, Sammy Rodgers, pursuant to 28 U.S.C. § 1406(a) and Federal Rule of Civil Procedure 12(b)(3).  In the alternative, venue should be transferred based upon *forum non conveniens* pursuant to 28 U.S.C. § 1404(a).  In the further alternative, but only in the event and to the extent the Court determines that venue in this Court is proper, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

<div style="text-align:right">

Respectfully submitted,

**BLANK ROME LLP**

By: */s/ Michael P. Trainor*
Michael P. Trainor (I.D. No. 209299)
Jonathan F. Ball (I.D. No. 59420)
One Logan Square
Philadelphia, PA 19103
(215) 569-5500
(215) 569-5555 (fax)
*Attorneys for Defendant,*
*Midland Credit Management, Inc.*

</div>

Dated: August 24, 2022

## **CERTIFICATE OF GOOD FAITH**

I, Michael Trainor, certify that I have in good faith attempted to confer with Plaintiff's counsel to provide his client with an opportunity to cure the deficiencies in the Amended Complaint. In particular, counsel have exchanged emails regarding the Plaintiff's improper choice of venue and as recently as August 24, 2022 I emailed Plaintiff's counsel asking that he reconsider his client's position regarding the topics addressed in the instant Motion.


Dated:  August 24, 2022                          */s/Michael P. Trainor*
                                                            Michael P. Trainor

## CERTIFICATE OF SERVICE

I, Michael P. Trainor, hereby certify that on this 24th day of August 2022, a true copy of the foregoing document was served on the following party via the United States District Court's online case filing system, CM/ECF:

>J. Allen Roth, Esq.
>805 S. Alexandria Street
>Latrobe, PA  15650
>(724) 686-8003
>federal@jarothlaw.com
>
>*Counsel for Plaintiff*

>*/s/ Michael P. Trainor*
>Michael P. Trainor

158411.01388/129360217v.6